# 15-1967

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### JANE DOE,

**Petitioner-Appellee**

**v.**

### UNITED STATES OF AMERICA,

**Respondent-Appellant.**

**On Appeal from the United States
District Court For the Eastern District
of New York Case No. 14-MC-1412**

**BRIEF OF AMICUS CURIAE FRONTIERS OF
FREEDOM INSTITUTE, INC. IN SUPPORT OF
APPELLANT AND REVERSAL**

Respectfully submitted in behalf of Frontiers of Freedom Institute, Inc. by:

Frederick M. Oberlander, Esq.
The Law Office of Frederick M.
Oberlander, P.C.
28 Sycamore Lane (Box 1870)
Montauk, New York 11954
(212) 826-0357
Fred55@aol.com

Richard E. Lerner, Esq.
The Law Office of Richard E.
    Lerner, P.C.
122 West 27th Street, 10th Floor
New York, New York 10001
(917) 584-4864
richardlerner@msn.com

## Corporate Disclosure Statement

Frontiers of Freedom Institute, Inc. is a non-profit corporation incorporated in Washington, DC. It has no parent corporation and no publicly held corporation owns 10% or more of its stock.

**Table of Contents**

Table of Authorities……………………………………………………...      iii

Interest of Amicus ……………………………………………………….      1

Summary ……………..…………………………………………………….      2

Argument…………..…………………………………………………..      6

Point I:           Expungement Constitutes Judicial Nullification of
Federal Sentencing Law, a Violation of the Supremacy
Clause …………………………………………….………...      6

Point II:         Expungement Ineluctably Leads to Infringement of First
Amendment Rights of Access, and Violation of
Separation of Powers and Vitiation of States' Rights …………….      14


Conclusion…………………………………………………………….      17

Certificate of Compliance………………………………………………….      18

# Table of Authorities

## Cases

*Craig v. Harney*, 331 U.S. 367 (1947)..................................................................9, 15

*Erie Railroad v. Tompkins*, 304 U.S.64 (1938) ........................................................15

*Ex Parte United States*, 242 U.S. 27 (1916) ........................................... 4, 9, 10, 13

*Gambale v. Deutsche Bank*, 377 F.3d 133 (2d Cir. 2004)........................................9

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004) ..........................14

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). ..............................9

*Tokoph v. United States*, 774 F.3d 1300 (10th Cir. 2014)......................................13

*United States v. Burnison*, 339 U.S. 87, 91-92 (1950). ..........................................15

*United States v. Oregon*, 366 U.S. 643, 649 (1961) ...............................................15

*Young v. U.S., ex rel. Vuitton et Fils*, 481 U.S. 787 (1987)......................................3

## Constitutional Provisiions and Statutes

Const. Article VI.......................................................................................................6

Const. First Amendment ................................................................................. *passim*

18 U.S.C. § 1506......................................................................................................12

18 U.S.C. § 3553........................................................................................................8

18 U.S.C. 3663A........................................................................................................6

18 U.S.C. § 3771....................................................................................................6, 8

## Rules

28 C.F.R. 50.9 .........................................................................................................14

Federal Rule of Evidence 609..................................................................................16

**Interest of Amicus**

Frontiers of Freedom Institute, Inc. is an educational institute whose mission is to promote the principles of individual freedom, the rule of law, peace through strength, constitutionally limited government, free enterprise, and traditional American values as embodied in the Constitution and the Declaration of Independence.

Frontiers of Freedom believes the rule of law is fundamental to liberty because it prevents tyranny: We are either governed by law or we are ruled by the whims of those who have acquired political power. The Constitution was wisely designed to prevent those in the executive, legislative and judicial branches from exercising arbitrary power and from treating us as their subjects. Our Founders intended to establish a government of laws, and not of men. In their eyes it was only *Common Sense* that, "the law ought to be king; and there ought to be no other."

## Summary: "By Any Other Name"

Lord Acton warned that power tends to corrupt and secrecy leads to the degeneration of justice. To uphold the decision and order of Judge Gleeson would be to legitimize judicial self-aggrandizement masquerading as enlightenment. This case is an exercise in *Newspeak*, hand-waving, and lexical gamesmanship, because expungement by any other name is nothing less than illegal sealing to the ultimate, irreversible degree.

Thirty-five years of Supreme Court precedent says that the public has a First Amendment right of access to most criminal court proceedings, including pleas and jury selection. Thirty-five years of precedent in this circuit says that that right extends to sentencings, and to records and transcripts of those proceedings, including, importantly, to docket sheets. Access cannot be denied absent detailed record findings after public hearings of a compelling interest for which the sealing is the least restrictive means possible, because the public has a right to oversee its courts.

For a federal district judge to place an entire criminal case under seal so it can't be found is a *per se* violation of all the above. But now, Judge Gleeson says that if we call it "expungement," rather than "sealing," he has an inherent right, not just to prevent access to, but to destroy, official records – and not just the court's

copies, but copies in the hands of the other branches – for no reason but to help Ms. Doe get a job.

It is the latest and most egregious act of what Justice Scalia calls judicial self-love[1], a further repudiation of the right of a free people to supervise their courts. Yet one would never know it from the briefs submitted by *amici* on behalf of Ms. Doe, who seem to think that the obligation of the courts begins and ends with her rehabilitation. As if that's the real reason for the power grab.

In this age of the Internet, the expungement could only work in cases where there wasn't already a record of the conviction outside the court system. In short, it can only work in secret cases – *i.e.*, cooperator cases, the ones that get sealed up ostensibly to "protect" the cooperator's safety, while allowing the cooperator to run riot. So it's hardly surprising this case comes here from the Eastern District, the home of secret cooperator dockets and the avoidance of accountability they allow. This is nothing more than the attempt to make legal what 230 years of history has made illicit, with the pretense that it is now new and improved, and justified for humanitarian reasons. Now, court records aren't just being illegally hidden in exchange for cooperation. No, now we have "expungement," the complete destruction of evidence, and indeed history.

---

[1] See *Young v. U.S., ex rel. Vuitton et Fils*, 481 U.S. 787, 822 (1987) (Scalia, J., concurring).

Even if Ms. Doe *is* fully rehabilitated, she does not get to rewrite history. She could, of course, petition Congress for legislation authorizing expungement. But this requires the hard work of citizenship. Getting legislation passed could require years of political debate and give and take, which is a feature of our Constitutional system, not a glitch to be bypassed by a mere judge's words "so ordered."

No one has thought this through. What exactly is the effect of expungement? Is it simply that those doing background checks won't find the case? Then how is this not the judicial aid and abettance of employment fraud, because that would only matter if Ms. Doe lies on her employment applications? Will it be that such a lie is no longer a lie? "Yes, it's true, yesterday I had a felony conviction, but today I've never had one, because the judge said 'so ordered'."

In short, what is presented here is an evasion of 35 years of Supreme Court and circuit precedent, and by a wave of the hand – calling it "expungement" instead of "sealing" – the district court accomplished by lexical trickery what it could not by law, *viz.* the *de facto* permanent sealing of a criminal case *by other means*.

It is now the centennial anniversary year of *Ex Parte United States*, 242 U.S. 27 (1916) (also known as the *Killits* case), which held unanimously that a federal judge abdicates his responsibility, and usurps legislative and executive power,

4

when he fails to impose a mandatory sentence, even if by "only" pocketing a

judgment and commitment order without signing it. Now, one hundred years later,

this court is called upon to determine whether mandatory sentencing law may be

evaded *by any other name.* Instead of the "pocket veto" of *Killits*, Judge Gleeson

has arrogated unto himself a power to nullify federal sentencing law, and to nullify

its consequences, such as the rights of victims to restitution, by the judicial fiat of

expungement. And because this can only work in cases that are already secret –

*i.e.*., cooperator cases – this will ineluctably become further corrupted into

expungements immediately following illegally secret sentencings of super

cooperators, leaving in its wake convicted tax preparers preparing tax returns,[2]

convicted securities fraudsters selling securities, and – why not? – convicted drug

dealers working in pharmacies.

---

[2] As troubling is that Judge Gleeson admitted in his decision the open secret, even
acknowledging that last year, at the request of then U.S. Attorney Loretta Lynch,
he ordered the guilty plea of a tax preparer to be sealed so that he could continue
preparing tax returns, despite that it is illegal for someone who has pled guilty to
such a crime to do so. That is, Ms. Lynch – now the Attorney General of the
United States – requested that someone who had pled guilty to tax fraud be
permitted, by court order, to continue to prepare tax returns, and this judge went
along with that request, rather than ask, By what authority can I issue such an
order, Ms. Lynch? When judicial nullification is unquestioningly viewed as a
public good, we have a rule-of-law crisis.

**Argument**

**Point I:** **Expungement Constitutes Judicial Nullification of Federal Sentencing Law, a Violation of the Supremacy Clause.**

Frontiers of Freedom submits that the rule of law must be respected, and Judge Gleeson's expungement order vacated forthwith.

The judicial nullification of federal law taking place within the Second Circuit is nothing less than a constitutional crisis. In violation of the Supremacy Clause, Article VI of the Constitution,[3] Judges are crafting special remedies – allowing criminal defendants to have sealed cases, to keep the money they've stolen (notwithstanding the Crime Victims Rights Act[4] and the Mandatory Victims Restitution Act[5]), and now expungement – for criminal defendants they deem to be good cooperators or to have been rehabilitated, and they're doing so behind an almost impenetrable wall of sealing orders, closed courtrooms, and "Doe" pseudonyms, leaving victims, the public and Congress completely in the dark.

---

[3] "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

[4] 18 U.S.C. 3771.

[5] 18 U.S.C. 3663A.

Judge Gleeson has now done in public what has hitherto taken place behind closed doors. Whereas other judges have "sealed" criminal defendants' cases, Judge Gleeson has made public his expungement of Jane Doe's sentence.

Public reaction to Judge Gleeson's order has been puzzling. In an article for *Slate* ("A Second Chance: One Judge Just Exercised His Power to Expunge a Conviction and Help Someone Start a New Life"[6]), Joel Cohen of Stroock & Stroock & Lavan, LLP compared offender Jane Doe to Jean Valjean and lauded the rehabilitative justice of expungement, exhorting that "[a] willingness to expunge a criminal record in the right circumstances is something a judge should consider as part of the array of powers enabling him or her to implement the individualization of justice." Mr. Cohen said, unquestioningly, "a judge has the power to expunge the conviction – to put the prior conviction in a dark hole undiscoverable by the press or any would-be snooper.… The judge can actually remove from the public court record the very existence of a conviction, and can do so without identifying—and therefore publicizing—the identity of the defendant."[7]

---

[6] http://www.slate.com/articles/news_and_politics/jurisprudence/2015/06/judge_gleeson_expunges_jane_doe_s_conviction_judges_can_give_criminals_a.html

[7] See also "Federal Judge Expunges 14-Year-Old Fraud Conviction in Rare Ruling," http://www.wsj.com/articles/federal-judge-expunges-14-year-old-fraud-conviction-in-rare-ruling-1432909226;   "From the Bench, a New Look at Punishment,"   http://www.nytimes.com/2015/08/27/nyregion/from-the-bench-a-new-look-at-punishment.html?_r=1.

In a New York Times editorial on October 19, 2015, the editors stated, "In fact it appears to be the first time that a federal judge has expunged a conviction for this reason. It should not be the last."[8]

We suspect it would be news to most of the country that the judicial obligation to ensure accurate records carries with it the power to obliterate all trace of them. No, the obligation to control the docket does not include the authority to falsify it, by commission or omission. Indeed, where Congress has spoken, such as in 18 U.S.C. § 3553 and 18 U.S.C. § 3771, and other statutes requiring certain public sentencing proceedings, it simply cannot be that a court is free to ignore that, or omit it from a public docket when it happens, or remove it years later after it has.

Frontiers of Freedom respectfully submits that, while judges have the right to advocate a change in the law, they do not have the authority to subvert it. Before casting such judges as heroes, we – the public, who supervise the courts – must first ask whether they are abrogating their constitutional responsibilities and arrogating powers unto themselves that they simply do not have.

---

[8] See "How to Get Around a Criminal Record," http://www.nytimes.com/2015/10/19/opinion/how-to-get-around-a-criminal-record.html.

*Consider the First Amendment:* The U.S. Supreme Court held a generation ago in the *Richmond*[9] line of cases that a First Amendment right of access exists for criminal court proceedings. A generation before that, the Court held in *Craig v. Harney*[10] that what occurs in the courtroom is "public property." And this court conceded in *Gambale*[11] that once information in a court docket has become public, it can never be made un-public.

Frontiers of Freedom therefore maintains that to order expungement of a conviction and seal up a defendant's court record is to take from the public information that is their property and to which they have a vested right of access.

*Now, consider supremacy:* The Supreme Court unanimously held in *Ex Parte United States, supra,* that crafting a special remedy not authorized by Congress and signed into law by the president by the corruption of judicial records and refusal to execute sentencing orders is an unconstitutional usurpation of legislative and executive authority. Called the "*Killits*" case for the federal judge who refused to impose the mandatory sentence, *Ex Parte United States* was finally resolved after the Supreme Court threatened the judge with contempt unless he capitulated.

---

[9] *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980).

[10] *Craig v. Harney*, 331 U.S. 367 (1947).

[11] *Gambale v. Deutsche Bank*, 377 F.3d 133 (2d Cir. 2004).

No matter how Judge Killits and his ideological acolytes like Judge Gleeson might wish otherwise, the Supremacy Clause provides that the valid laws of Congress are the supreme law of the land. Thus, any statute, unless void or unconstitutional, must be obeyed and enforced by the federal courts. Frontiers of Freedom submits that the rule of law must prevail over the humanitarian whims of Judge Gleeson. So holds the *Killits* case, as the Supreme Court held it to be flatly illegal for federal judges to fail to impose statutorily required minimum prison sentences for mere "considerations of humanity," *Ex Parte United States*, 242 U.S. at 51. The Court reasoned that to allow otherwise would be to let judges decide for themselves what laws to enforce and what laws to ignore – judicial tyranny.

No student of juridics should be surprised. From Jefferson on, the path to judicial tyranny has been unmistakable *if* at times unintentional. Now what? Court records must be subject to destruction when the judge thinks it's a good idea?

***Now the pragmatic problems:*** It is shockingly naïve to believe that, in an age where desert nomads can stream *Dancing With the Stars* on their satellite phones, anything once public can ever be re-hidden. Information on federal court dockets is instantly vacuumed up by websites like RecapTheLaw.Org and other mirror sites. Even when federal courts illegally re-seal information already made public on "PACER" – Public Access to Court Electronic Records – the information is still available for those who know where to look.

10

It follows that expungement and the disappearance of convictions off the public docket can only work where the case and the defendant have always been hidden behind sealing orders, or "John Doe" and "Jane Doe" pseudonyms. And that means judges must claim the power to hide entire criminal cases forever.

This is not only unconstitutional; it is patently unlawful, notwithstanding that it is common practice within this circuit. Judicial concealment violates the public's First Amendment right of access to criminal proceedings and repudiates the statutory rights of crime victims – under the Mandatory Victims Restitution Act and the Crime Victims Rights Act – to be kept informed of the prosecution of those who are charged with victimizing them, not to mention their rights to "mandatory" restitution from the convicted defendant.

Yet "Doe" sealings within the Second Circuit are so commonplace that they are openly discussed in court proceedings without question of their legality.[12] At the recent sentencing of computer hacker Hector Monsegur, his defense counsel Peggy Cross-Goldenberg of Federal Defenders of New York stated on the record: "Because most cases are resolved with a guilty plea, the cooperation is never

---

[12] It is now a matter of common knowledge that this circuit's favored "Doe" defendants and others with judicially falsified dockets have used such secrecy to continue their criminality. Myron Gushlak, Felix Sater, Joseph Shereshevsky and Salvatore Lauria are just a few who pled guilty in secret and then continued to defraud others of hundreds of millions of dollars.

publicly revealed and some sentencing proceedings and even some complete

dockets remain under seal. This could have been such a case, because all of Mr.

Monsegur's co-conspirators, all of the co-conspirators, pled guilty without a

trial."[13]

Unfortunately, the recent coverage plays these judges up as a heroes, rather

than as rogues in robes.[14] Their attempts to usurp congressional and executive

authority is depicted in strangely reverential tones, as if this naked violation of the

separation of powers is admirable, rather than seditious.

The Frontiers of Freedom submits that judges who repudiate federal

sentencing laws act in violation of the law. Judges who order expungements act in

violation of 18 U.S.C. § 1506, a statute enacted in 1790 that makes it a felony to

falsify or hide court records and thereby render void the judgment of conviction.

The crafting of special remedies, such as expungement, is simply the latest

adventure in the long history of the self-aggrandizement of judicial power. Indeed,

---

[13] http://cryptome.org/2014/05/monsegur-sentencing.htm. See pages 7-8.

[14] But it's nothing new. *The New York Times*, after all, praised the enlightenment of the federal judge who released mob killer Sammy "the Bull" Gravano, who admitted 19 murders, including of the innocent, after time served, urging that the public should "feel satisfied" that a "hard bargain" was made for the cooperation. (A.M. Rosenthal, to his credit, wrote his own Op-Ed that it made him sick). The court will recall that Gravano then used his freedom to become the largest Ecstasy dealer in Arizona.

two hundred years ago Jefferson warned that judges, "are in the habit of going out of the question before them, to throw an anchor ahead and grapple further hold for future advances of power, … steadily working … to consolidate all power…."[15]

The incantation "extraordinary circumstances" does not vest the court with inherent powers to purge a criminal conviction. *Ex Parte United States* does not allow for such hedging. As was recently discussed in *Tokoph v. United States*, 774 F.3d 1300 (10th Cir. 2014), federal courts lack inherent power to expunge a sentence.[16] No one would believe that the U.S. Supreme Court – after having threatened Judge Killits with contempt for pocket vetoing a defendant's sentence – would have found that he had purged his contempt by docketing the judgment and commitment order, and then, the next day, expunging the whole case. Judge Gleeson's expungement of Jane Doe's sentence is no less contemptuous of the rule of law than was Judge Killits' pocket veto of a criminal sentence.

---

[15] See Autobiography, Ch.8, available at: http://press-pubs.uchicago.edu/founders/documents/v1ch8s44.html.

[16] As the *Tokoph* court noted, the Federal Youth Corrections Act, 18 U.S.C. 5021, the only federal statute that even arguably authorized expungement of a criminal arecord, was repealed in 1994.

**Point II:** **Expungement Ineluctably Leads to Infringement of First Amendment Rights of Access, and Violation of Separation of Powers and Vitiation of States' Rights.**

In *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004), this court held that the public possesses a First Amendment right of access to dockets in civil and criminal cases, subject to restriction only under extraordinary circumstances. Expungement is a more egregious infringement of the public's right to access to court records than sealing. Sealing is never final; expungement is forever.

DOJ regulations require the U.S. Attorney to review the sealed criminal cases every sixty days to determine whether sealing remains necessary. 28 C.F.R. 50.9[17] provides:

> Because of the vital public interest in open judicial proceedings, the records of any proceeding closed pursuant to this section, and still sealed 60 days after termination of the proceeding, shall be reviewed to determine if the reasons for closure are still applicable. If they are not, an appropriate motion will be made to have the records unsealed. If the reasons for closure are still applicable after 60 days, this review is to be repeated every 60 days until such time as the records are unsealed. Compliance with this section will be monitored by the Criminal Division.

This duty is overridden by expungement, which is irreversible. Though federal judges have the power to protect their own dockets, such power does not give them the power to recall any document that directly or indirectly concerns the case, for the predicate of the argument that a federal judge may order expungement

---

[17] Available at https://www.law.cornell.edu/cfr/text/28/50.9

is the notion that the information is the court's property. [18] No it is the public's

property, held in trust by the court.[19] To expunge a conviction, and restrict the

other branches' use of the information, would be to hold that any information that

passes through a federal court necessarily becomes the "property" of that court. To

that, the Frontiers of Freedom concludes by *reductio ad absurdum*:

1.      The Securities and Exchange Commission prohibits those convicted

of certain crimes, such as fraud, from participating in certain securities practices.

This is a clear expression of intent to override the ability to expunge. Now that

Jane Doe has had her conviction expunged by Judge Gleeson, should she be able to

sell securities?

2.      Non-citizens convicted of a felony can be extradited, and barred from

re-entry. Would expungement of Jane Doe's record prohibit the executive branch

from barring Jane Doe from re-entering the country if she had not obtained

citizenship in 1989?

---

[18] Indeed, such a predicate would vitiate the property laws of every state, creating out of whole cloth a federal common law of property (in violation of *Erie Railroad v. Tompkins*, 304 U.S.64 [1938]). The "devolution of property ... is an area normally left to the States," *United States v. Oregon*, 366 U.S. 643, 649 (1961), the transfer of property being a "part of the residue of sovereignty retained by the states, a residue insured by the Tenth Amendment." *United States v. Burnison*, 339 U.S. 87, 91-92 (1950).

[19] See *Craig v. Harney*, 331 U.S. 367 (1947) (what occurs in a public courtroom is "public property").

3.     Federal Rule of Evidence 609 provides that evidence of a fraud conviction is admissible into evidence to impeach a witness, if the conviction occurred within the last ten years.[20] That is, introduction of the conviction is an absolute right. Would Jane Doe be entitled to testify that she was not convicted of fraud?

4.     If a newspaper figures out Jane Doe's true name and reports that she had been convicted of fraud, would it be subject to liability for defamation? Is there a constitutional prerogative to alter history?

5.     Would Jane Doe be perjuring herself if she were to answer "No" on Bureau of Alcohol, Tobacco and Firearms Form 4473[21], in response to the question 11(c), "Have you ever been convicted in any court of a felony, or any other crime, for which the judge could imprison you for more than one year, even if you received a shorter sentence including probation?" Or does Judge Gleeson's expungement order give Jane Doe a license to lie on the application?

6.     And is expungement a license to lie on job applications? That Jane Doe has difficulty getting a job is not a constitutional basis to seal a record, much less expunge it. Just as the constitutional right to be free does not mean one has a

---

[20] Admission of the conviction into evidence ten years after conviction is within the discretion of the court.

[21] See BATF Form 4473, available at: https://www.atf.gov/file/61446/download.

constitutional right to get out of jail, so too the right to seek a job provides no constitutional right to the expungement of a criminal record that hinders finding a job.

## Conclusion

Wherefore, Frontiers of Freedom Institute, Inc. respectfully submits that the decision and order of Judge Gleeson must be reversed, and Jane Doe's conviction must be reinstated.

Respectfully submitted in behalf of Frontiers of Freedom Institute, Inc., on this 14th day of January, 2016 by:

/s/ Frederick M. Oberlander, Esq.
The Law Office of Frederick M. Oberlander, P.C.
28 Sycamore Lane (Box 1870)
Montauk, New York 11954
(212) 826-0357
Fred55@aol.com

/s/ Richard E. Lerner, Esq.
The Law Office of Richard E. Lerner, P.C.
122 West 27th Street, 10th Floor
New York, New York 10001
(917) 584-4864
richardlerner@msn.com

## Certificate of Compliance

Counsel for Amicus Curia Frontiers of Freedom Institute, Inc., certifies the following:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 29(d) because it contains 3,761 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated:      New York, New York
            January 14, 2016

                                    Respectfully Submitted,

                                    /s/ Richard E. Lerner